By the Court—Robertson, J.
The Referee has not found in this case that any certificate of stock was issued to Mr. Morris before the advance by the plaintiff’s agents, and the evidence is clear that such advance was made immediately after, and solely on the faith of, the transfer on the books of the company, by Mr. Morris, to the plaintiff’s agents. The only representation, therefore, by the company or any of its agents, of the holding of any stock by Mr. Morris, was that, if any, arising from the. permission by the transfer clerk to him to transfer reputed stock, on a transfer book kept in the company’s office. Ho subsequent recognition of that, by the issue of a new certificate, operated to deceive the plaintiff’s agents before the advance of the money.
The® case is, therefore, distinguishable from the case of the Mechanics’ Bank against the present defendants, (3 Kern., 599,) solely by the fact that the transfer clerk of the *289 latter permitted an entry, to be made in a transfer book kept in their office, of as much stock as was contained in the spurious certificate. It is true that case may not have gone the length of deciding that the company could not have authorized its officers and agents to bind it by representations as to the ownership of its stock by persons who, in fact, did not hold any, and thus become liable to those injured by reliance on such representations for damages sustained by them. But I understand the Court to have held, that the transfer agent, (Schuyler,) was not so authorized in fact, and that the company did not give him the appearance of having such authority, or hold him out to the world as having it, by placing him in the position of trust and confidence they did. The language of the prevailing opinion is: “ The power of the agent to charge “ Ms principals, by doing a wrong, must be traced dis- “ tinctly to Ms authority, and it cannot be referred to an “ increased facility for imposing on the credulity of others, “ derived incidentally from his appointment to a situation “of trust” This, of course, is entirely independent of the question whether the false statement was culpable or innocent. *'
The question of fact, therefore, arises in this case, whether the company, in fact, gave any power to the transfer agent or his clerk who had charge of the transfer book, to represent to any one, that another person owned shares of stock in the company. If not, the questions of law arise, whether the possession of the transfer books and ^authority to allow them to be used, constituted the indiefk of an authority so to represent, and whether per-mission to Mr. Morris to enter a transfer on such books, and Ms subsequent entry, constituted such a representa-, tion. There was no evidence of any direct authority to make such representation. In the case already referred to, it was held that even the authority of the agent, who signed the certificates of stock, to do so, being limited by the necessity of actual ownership of such stock, by the person whom he therein certified to.be the holder,, such *290 certificates were not sufficient to bind the company as a representation that such person owned it 5 and that all assumption that the agent appeared from his position to have such authority, was unwarranted. The same reasoning must apply to the possession of the transfer books; and an authority of the transfer agent to permit a transfer, accompanied with such possession, does not amount to such indicia of authority to. certify to ownership of stock, as to fix a liability upon the defendants. Of course, if it does not, the mere permission to enter the transfer would not be equivalent to a representation that Mr. Morris owned the stock in question. Possibly the effect might have been different, had a new certificate been issued after the transfer on the faith of which the advance was made. But-that is not this case.
The judgment, therefore, must be affirmed, with costs.